**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| JERRY T. ARENDALL, JR., § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | Civil Action No. |
| § | | 7:03-CV-0029-BF (R) |
| COMMISSIONER OF THE SOCIAL § | | |
| SECURITY ADMINISTRATION, § | | |
| Defendant. § | | |

**MEMORANDUM OPINION AND ORDER**

This is a consent case before the United States Magistrate Judge. Jerry T. Arendall, Jr. ("Plaintiff") seeks judicial review of the Commissioner of Social Security's ("Commissioner") administrative decision denying Plaintiff's application for disability benefits under Title II and Title XVI of the Social Security Act. The Court has considered the record, the pleadings, and the briefs. The Court hereby **AFFIRMS** the final decision of the Commissioner.

**I.    Background**[1]

    **A.    Procedural History**

Plaintiff filed his application for Title II disability insurance benefits and Title XVI supplemental security income on May 31, 2001, alleging a disability onset date of August 2, 2000. (Tr. at 68-70, 224-26.) Plaintiff's application was denied both initially and upon reconsideration. (*Id*. at 43-57, 226-38.) He then requested a hearing before an Administrative Law Judge ("ALJ"). (*Id*. at 57.) After a hearing on June 17, 2002, ALJ Thomas E. Bennett denied Plaintiff's claim in a decision entered on October 19, 2002. (*Id*. at 9-15, 18-42.) On December 20, 2002, the Appeals

---

[1] The following background information comes from the transcript of the administrative proceedings, which is designated as "Tr."

Council denied Plaintiff's request for review, thereby rendering the ALJ's unfavorable decision the final decision of the Commissioner. (*Id*. at 4-8.) On January 31, 2003, Plaintiff filed this action for review of the decision.

The case is now before this Court for decision. Plaintiff's sole contention is that the Commissioner failed to meet its burden of proof at Step Five[2] of the sequential evaluation process to show that there are jobs which Plaintiff can perform that exist in the economy in significant numbers. (Pl.'s Br. at 2.) The Commissioner counters that the ALJ's unfavorable decision is supported by substantial evidence and that the ALJ applied the correct legal standard. (Def.'s Br. at 2-3.)

**B.    Factual History**

1.    Plaintiff's Age, Education, and Work Experience

Plaintiff's date of birth is January 31, 1965. (Tr. at 68.) He has a GED and attended college for two years. (*Id*. at 104.) Plaintiff's past fifteen years of work include the following positions: plant maintenance worker, truck driver, fork lift driver, mechanic, and backhoe operator. (*Id*. at 107.)

2.    Plaintiff's Medical Evidence

In his disability report, signed May 27, 2001, Plaintiff listed his disabling condition as a back injury that made him unable to sit, stand, or walk for any length of time. (Tr. at 97, 115.)

In March of 1996, Plaintiff was admitted to the hospital under the care of Michael Standefer, M.D., for surgical treatment of severe low back and left lower extremity pain. (*Id*. at 138.) Plaintiff underwent a left L5-S1 hemilaminotomy with the removal of a large free extradural disc fragment.

---

[2] The five step sequential process is described at pages 7-8 of this opinion.

Dr. Standefer's notes reveal that the procedure was a success and that post-operation wounds "healed nicely." (*Id*. at 138.)

On June 6, 2000, Plaintiff went to the hospital because his "back gave out." (Tr. at 166.) The medical opinion revealed no fracture or malalignment, but the doctor did notice scoliosis and disc narrowing in the lower lumbar spine. Plaintiff continued to visit clinics and hospitals and was diagnosed with chronic lower back pain and mild degenerative discs on the L4, L5, and S1. (*Id*. at 170, 172, 182, 185, 190.) Generally, the recommended treatment was physical therapy and "lighter, more sedentary-type work activity." (*Id*. at 213, 215.)

In late August of 2002, Robert M. Simpson, M.D., recorded his medical findings on the "Medical Source Statement of Ability to Do Work-Related Activities" form. (Tr. at 220-23.) Dr. Simpson found Plaintiff could occasionally lift up to 20 pounds, frequently lift up to 10 pounds, stand and/or walk about six hours in an eight-hour workday, sit unaffected by his lower back pain, push or pull unaffected by his lower back pain, occasionally kneel, crouch, crawl, or stoop, but never balance or climb. (*Id*. at 221.)

### 3. The Hearing and the ALJ Findings

On June 17, 2002, the ALJ conducted a hearing attended by Plaintiff, his counsel, and the Vocational Expert ("VE"), Clifton A. King. (Tr. at 17.) The ALJ examined Plaintiff and heard his testimony. (*Id*. at 20.) The last work Plaintiff performed was with Town & Country Cable, and his duties included operating a backhoe, a bulldozer, and a delivery truck. He also delivered heavy equipment. (*Id*.) Plaintiff testified that he has been a trucker for much of his life and has a commercial operator's license. (*Id*. at 21.) At one point, he trained for the job of auto mechanic. (*Id*.) Before working as a mechanic, he worked for BDM Enterprises simulating indirect fire for the

3

military. This work required riding ATV's, driving Hum-V's, causing explosions, lifting pyro-boxes of up to 200 pounds, and simulating a war zone with the sophisticated laser tag system. (*Id*. at 22.) Plaintiff's past relevant work included plant maintenance worker, truck driver, fork lift driver, mechanic, and backhoe driver. (*Id*. at 30.)

Plaintiff's career as a mechanic was cut short by the need for surgery on his lower back. (Tr. at 23). Plaintiff testified that the surgery was a success because he went into the hospital with a paralyzed right leg and came out walking. (*Id*. at 23.) However, he stated that after this surgery, the condition of his back has progressively degenerated to his current condition. (*Id*. at 24.) He said that because he has no insurance, he has not had an MRI to determine the condition of his back or the necessity for future surgery. (*Id*. at 25.) Plaintiff qualified for indigent care, but it was cancelled, allegedly because a doctor thought he was not indigent when he dressed decently for an appointment. (*Id*.) Plaintiff told the ALJ that his back injury makes climbing stairs impossible, that pain goes through his legs all the time, and that his right leg simply quits working. (*Id*. at 24-25.) Plaintiff testified that, compared to how he felt before the back surgery in 1996, his back hurts more now and his right leg hurts less. (*Id*. at 25.)

Plaintiff testified that he can only stand or walk for about fifteen minutes before he has muscle spasms and falls down. (Tr. at 26.) He said that sitting causes him bad lower back pain, and therefore, he lies on a bed to keep pressure off his back. (*Id*.) Plaintiff testified that he spends around seventy to eighty percent of his day lying down in bed. (*Id*.) He previously lived in his ex-wife's garage apartment, but because the steps were too difficult, he now stays in her motor home. (*Id*.) He takes a shower at least every other day; his daughter helps with the laundry and housework; and he cooks only meals that can be warmed in a microwave oven. (*Id*. at 27.) His daughter does

4

most of his grocery shopping, and he can occasionally handle the weight of a gallon of milk. (*Id.* at 28.) On a good day, he sits up and quilts as he watches television; on a bad day, which he said might occur two to four times a month, he stays in bed all day. (*Id.* at 29-30.) Plaintiff has no source of income, and except for a six month period when he received food stamps, his food is supplied by his daughter and ex-wife. (*Id.* at 31.) The ALJ began to question Plaintiff more specifically about the pain in his back. Plaintiff explained that the pain starts in the lower part of his back and travels to his knee. (*Id.* at 33.) He said that his "cheek" feels "like it's on fire," and he feels this kind of pain about eighty percent of the time. (*Id.*)

The ALJ then questioned the VE. (Tr. at 36.) The VE described all Plaintiff's substantial gainful activity for the past fifteen years as follows: backhoe driver (power shovel operator) was skilled work with a medium exertion level and SVP of 5; heavy equipment operator was skilled work with a medium exertion level and SVP of 6; truck driver was semi-skilled work with a medium exertion level and SVP of 4; maintenance mechanic was skilled work with a medium exertion level and SVP of 7; and automotive mechanic was skilled work with a medium to heavy exertion level and SVP of 7. (*Id.* at 36-37.) The ALJ next asked a hypothetical: "If I should find [VE], that this young man can work in a sedentary, stand/sit job, that is, where he could stand/sit almost at his option, does he have skills or worker attributes which would be of assistance to him in working in such jobs . . . [existing] in significant numbers?" (*Id.* at 37.) The VE stated that there are both light jobs, with the sit/stand option that would fit the hypothetical, and sedentary jobs, with no significant transferability. (*Id.*) The VE further noted that Plaintiff can do sedentary work. (*Id.*) The VE then testified about two sedentary jobs with sit/stand as a frequent option: bonder semiconductors, which is unskilled work with a sedentary exertion level and SVP of 2, with 1,000 to 1,200 jobs in Texas

5

and 30,000 jobs nationally; and patcher, which is unskilled work with a sedentary exertion level and SVP of 2, with 800 jobs in Texas, and 20,000 jobs nationally. (*Id*. at 38.) The VE was going to continue listing more jobs of this nature, but the ALJ stopped him saying, "I think that's enough." (*Id*.)

Plaintiff's attorney then examined the VE. The VE stated that sedentary jobs with a sit/stand option customarily allow standing less than two hours in an eight hour day. (Tr. at 38.) The VE also stated that attendance is more important in an unskilled position, as opposed to a skilled position, and missing work three to four times in the first month, depending on the employer, could make it difficult to maintain the job. (*Id*. at 38-39.) After Plaintiff's counsel summarized the record, the ALJ closed the hearing. (*Id*. at 40.)

On October 19, 2002, the ALJ issued an unfavorable decision on Plaintiff's Title II and Title XVI claims. (Tr. at 9-15.) The ALJ found that Plaintiff had not engaged in substantial gainful activity since August 2, 2000. (*Id*. at 14.) He also found that Plaintiff suffers from degenerative disc disease of his lumbar spinal region resulting in chronic back pain; but he concluded that this severe impairment or any combination of impairments did not meet or equal the criteria of any of the listed impairments described in 20 C.F.R. Pt. 404, Supt. P., App. I (the "Listings"). (*Id*.) The ALJ determined that Plaintiff cannot meet the demands and requirements of his past work, but he does possess the residual functional capacity ("RFC") to perform work at the light exertional level–not involving any climbing or balancing, or more than occasional kneeling, crouching, crawling, or stooping. (*Id*. at 14-15.)

The ALJ noted that there was no showing that the claimant has suffered further back injuries or has developed progression of his back disease requiring future surgery. (Tr. at 13.) Plaintiff has

6

received ongoing treatment and the physical examinations have not shown pain or other symptoms at debilitating levels. (*Id*.) Further, Plaintiff has not been shown to need any assistive devices. (*Id*.) The ALJ found that there is work that Plaintiff can perform consistent with his age, education, prior work experience, and RFC and further found that this work exists in the economy in significant numbers in the two jobs that the VE testified to, that of semiconductor bonder and that of patcher. Accordingly, the ALJ found that Plaintiff was not disabled. (*Id*. at 15.)

## II.     Legal Standards

A claimant must prove that he is disabled for purposes of the Social Security Act to be entitled to social security benefits. *Leggett v. Chater*, 67 F.3d 558, 563-64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled. Those steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

> 5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the inquiry, the burden lies with the claimant to prove his disability. *Leggett*, 67 F.3d at 564. The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*. Once the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits is supported by substantial evidence and to whether the proper legal standard was utilized. *Greenspan*, 38 F.3d at 236; 42 U.S.C.A. § 405(g) (West Supp. 1999). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

**III.    Analysis**

Plaintiff contends that the Commissioner failed to meet her burden of proof that there are jobs existing in the economy in significant numbers that Plaintiff can perform. (Pl.'s Br. at 2.) He contends that 1800 jobs is not a significant number, when considered as a percentage of the Texas workforce. (*Id*. at 4.) The Commissioner responds that the ALJ's unfavorable decision is supported by substantial evidence and applies the correct legal standard. (Def.'s Br. at 2-3.)

When Congress defined disability within the meaning of the Social Security Act (the "Act"), it spoke in terms of numbers, not of percentages. The Act provides: "work which exists in the national economy" means work that exists in significant numbers either in the region where such individual lives or in several regions of the country.  42 U.S.C. § 423(d)(2)(A).  The applicable regulation explains the significant numbers requirement as follows:

> Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications.  Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered "work which exists in the national economy." We will not deny you disability benefits on the basis of the existence of these kinds of jobs.

20 C.F.R. § 404.1566(b).

This definition was first included in the Act in the Social Security Amendments of 1967. The legislative history of the amendments supports the interpretation of the requirement found in the regulations.  Speaking of the "significant numbers" aspect of the definition of disability, Conference Report No. 1030 states:

> The conference agreement contains substantially the provision of the House Bill, but includes language designed to clarify the meaning of the phrase "work which exists in the national economy."  This language puts into the statute the same meaning of the phrase that was expressed in the reports of both committees.

9

> Under the added language, "work which exists in the national economy" means work that exists in significant numbers in the region in which the individual lives or in several regions in the country. The purpose of so defining the phrase is to preclude from the disability determination consideration of a type or types of jobs that exist only in very limited number or in relatively few geographic locations in order to assure that an individual is not denied benefits on the basis of the presence in the economy of isolated jobs he could do.

*Reprinted in* 1967 U.S.C.C.A.N. 3179, 3197-98. "Congress did not intend to foreclose a claimant from disability benefits on the basis of the existence of a few isolated jobs." *Walker v. Mathews,* 546 F.2d 814, 819 (9th Cir. 1976). Nevertheless, when a VE testifies that there are a significant number of jobs for which a claimant is qualified, it is immaterial that this number is a small percentage of the total number of jobs in a given area. *Hall v. Bowen,* 837 F.2d 272, 275 (6th Cir. 1988).

The conclusion of whether or not work exists in significant numbers depends upon the facts of the case in question. *Hall*, 837 F.2d at 275. Courts generally consider several criteria, including: the level of claimant's disability; the reliability of the vocational expert's testimony; the reliability of the claimant's testimony; the distance claimant is capable of traveling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and any other pertinent factors. *Id*. *See also Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992); *Jenkins v. Bowen,* 861 F.2d 1083, 1087 (8th Cir. 1988).[3]  Further, the Commissioner is

---

[3] Although the decision must be fact-driven, it is interesting to note that in *Hall,* the Sixth Circuit found that a vocational expert's testimony that there existed 1,350 to 1,800 jobs the claimant could perform in the local economy was sufficient to establish the existence of a significant number of jobs. *Hall*, 837 F.2d at 275. In *Trimiar,* the vocational expert testified that the claimant could perform work as an escort driver, recreational facility attendant, and telephone solicitor. *Trimiar*, 966 F.2d at 1330. The Tenth Circuit found that the existence of 900 such jobs in the claimant's home state was a significant number. *Id*. In *Jenkins,* the Eighth Circuit found that the existence of 500 jobs as a security guard in the local economy constituted a significant number. *Jenkins*, 861 F.2d at 1087.

not required to show that the jobs are available in the plaintiff's locality, that a specific job vacancy exists that the claimant could fill, or even that the plaintiff would be hired if he were to apply for the job.  20 C.F.R. § 404.1566(a).  *See Harrell v. Bowen*, 862 F.2d 471, 479 (5th Cir. 1988) (holding that the Secretary is not required to show that jobs in claimant's local area are available to him); *Knott v. Califano*, 559 F.2d 279, 282 (5th Cir. 1977) (holding that the relevant job area is not confined to the claimant's locality).

      Plaintiff failed to explain why, under the facts of his case, the jobs that the VE testified to were not sufficient.  The VE testified to two specific jobs which have 2,000 unskilled and sedentary job positions in Texas and 50,000 nationally that are well within Plaintiff's physical capabilities.  The record also shows that Plaintiff has the capability to drive a vehicle occasionally.  There is no suggestion in the record that either Plaintiff's or the VE's testimony was unreliable.  The VE was ready to testify to more such jobs when the ALJ cut him off and found that the jobs he had mentioned were sufficient.  Finally, the jobs are not isolated. Considering all these factors, the record contains substantial evidence to support the ALJ's conclusion that 2,000 jobs in Texas, and 50,000 jobs in the national economy constitute significant numbers of jobs in the national economy in two occupations which have requirements that Plaintiff is able to meet with his physical abilities and vocational qualifications.  Further, the ALJ applied the correct legal standard.  The Commissioner met her burden of proof at Step Five, and Plaintiff failed to rebut the Commissioner's evidence.

**IV.     Conclusion**

For the foregoing reasons, Plaintiff's claim is **DENIED** and that the final decision of the Commissioner is **AFFIRMED**.

**SO ORDERED.**    September 27, 2005.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE